**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-4287**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

REBECCA LYNN BARKER,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:21-cr-00070-MR-WCM-1)

Argued:  May 8, 2026                                    Decided:  July 21, 2026

Before GREGORY, HARRIS, and RICHARDSON, Circuit Judges.

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Gregory and Judge Richardson joined.

**ARGUED:**  Charles Robinson Brewer, Asheville, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:**  Dena J. King, United States Attorney, Russ Ferguson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Rebecca Barker entered a conditional guilty plea to one count of conspiracy to distribute and possess with intent to distribute methamphetamine. As allowed by her plea agreement, she now appeals the denial of her motion to suppress evidence recovered during a search of her home, which was conducted pursuant to a warrant. Barker argues that the search warrant was not supported by probable cause because the application failed to show any nexus between the suspected crime and her home, and that these purported deficiencies also defeat the good faith exception to the exclusionary rule.

Because we conclude the warrant at issue was supported by probable cause, we affirm.

## I.

### A.

The criminal case against defendant Rebecca Barker arose out of a long-running law enforcement investigation of methamphetamine trafficking in parts of North Carolina and Georgia. In March 2020, law enforcement received information that a woman named Jane Gill would be transporting a large quantity of methamphetamine from Georgia to Barker's house in western North Carolina. At the time this information was received, Barker had at least two pending felony cases against her in Georgia for methamphetamine and firearms-related offenses.

On the morning the drug delivery was scheduled to take place, law enforcement officers conducting surveillance of Barker's home followed a green Jeep leaving the

2

property. As the officers watched, the Jeep ran a stop sign and continued to drive erratically. When the Jeep pulled into a parking lot, the officers approached and identified Barker as the driver and only occupant. Barker consented to a search of the vehicle, and the officers found a single Xanax tablet on the driver's side of the vehicle, as well as a .22 caliber pistol concealed in Barker's purse. Barker was issued citations for possession of a controlled substance and carrying a concealed weapon without a permit and then allowed to leave.

Later that afternoon, officers saw Gill leaving Barker's house in a white Jeep. When they followed and attempted to pull her over, Gill led the officers on a high-speed chase. And when she finally stopped driving, Gill fled on foot. As she ran, she attempted to dispose of an item she was carrying by throwing it away from her. The officers apprehended Gill and recovered the object she had thrown – a Ziplock baggie containing roughly 60 grams of pure methamphetamine. During a subsequent search of Gill's vehicle, officers found $2,151 in cash.

Shortly thereafter, officers returned to Barker's house. When no one answered the door, the officers secured the premises and applied for a warrant to search the residence.

**B.**

A detective from the county Sheriff's Office filed an affidavit in support of the search warrant application. In the affidavit, he first summarized his background investigating narcotics trafficking in the county. Law enforcement had been monitoring Barker's house that day, he explained, "in reference to drug activity which was occurring" there. J.A. 88. Next, he described the officers' interaction with Barker that morning,

3

including finding Xanax and a concealed firearm in her vehicle. And he recounted seeing Gill's car "leave [Barker's] residence," following the car, apprehending Gill after the chase, and recovering the baggie of methamphetamine along with the cash found in the car. J.A. 88–90. Finally, relying on his "training and experience," the affiant described the types of items that drug dealers often keep in or around their residence, including contraband, proceeds, other records of drug sales, and paraphernalia to package and distribute the drugs. J.A. 90. Given "what was found in the early morning hours involving Barker, as well as the incident involving Gill," he opined, it was likely that Barker's home "contains items of evidence involving the crime of trafficking methamphetamine, and possession of drug paraphernalia, and possession of schedule IV controlled substance[s]." J.A. 91.

A state magistrate issued the search warrant, and law enforcement officers executed it at Barker's home the same evening. During the search, officers found more than 160 grams of actual methamphetamine, as well as paraphernalia including a set of digital scales and sandwich bags used for packaging drugs for redistribution, more than $7,200 in cash, and a shotgun. Barker was arrested two days later and charged with a number of state controlled substance offenses.

## C.

In 2021, a federal grand jury in the Western District of North Carolina indicted Barker and 22 co-defendants. The indictment charged Barker with three federal crimes: (1) conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846; (2) possession of 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (3)

4

possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Barker moved to suppress the evidence recovered from the search of her home, arguing that the warrant authorizing the search lacked probable cause because it failed to show a link between her house and any criminal activity. The affidavit, she asserted, contained "no evidence . . . that any type of drug activity was taking place" at her house or that Gill had ever been inside the home, and thus it provided "no nexus[] or connection[] between the observed and articulated facts presented to the magistrate and the . . . place searched." J.A. 53–54.

This motion was referred to a magistrate judge, who recommended suppression be denied under the good faith exception to the exclusionary rule. As an initial step, the magistrate judge agreed with Barker that the search warrant lacked probable cause. *See United States v. Barker* ("*Barker I*"), 2022 WL 1498201, at *3–5 (W.D.N.C. Apr. 21, 2022). For this inquiry, the magistrate judge explained, the relevant question was not whether Barker was suspected of criminal activity but whether "it was reasonable to believe that the items sought by the warrant would be found in" her house. *Id.* at *4. And here, the magistrate judge concluded that the warrant application lacked "specific facts indicating that evidence of [Barker's] alleged drug activities would be found" there. *Id.*

But the magistrate judge found that the good faith exception applied to the search at issue. *Id.* at *5–6. As the magistrate judge explained, "even if a warrant is found to . . . lack[] probable cause, evidence obtained from the execution of that warrant may nevertheless be admitted" if law enforcement reasonably relied on the issuance of the

5

warrant in conducting the challenged search. *Id.* at \*5 (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). Because the warrant application in this case "provided some information concerning potential drug-related evidence" and Barker's home, *id.*, the magistrate judge concluded, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* (internal quotation marks omitted) (quoting *United States v. Thomas*, 908 F.3d 68, 72 (4th Cir. 2018)). The magistrate judge therefore recommended denying Barker's motion to suppress pursuant to the good faith exception. *Id.* at \*6.

Barker did not timely object to the magistrate judge's recommendation. Shortly after the deadline for objections passed, the district court adopted the recommendation and denied Barker's motion to suppress, noting that "the parties ha[d] not filed any objections." *United States v. Barker* ("*Barker II*"), 2022 WL 1494993, at \*1 (W.D.N.C. May 11, 2022). The district court also found that the magistrate judge's "proposed findings of fact are correct and . . . the proposed conclusions of law are consistent with current case law." *Id.* Roughly a week after the district court issued this order, Barker untimely filed objections to the magistrate judge's recommendation. The district court overruled them, noting both the untimeliness of the objections and the court's previous determination that the magistrate judge's proposed conclusions of law were correct. In a cursory motion, Barker sought reconsideration, which the district court denied. Shortly thereafter, Barker filed a second motion to reconsider.

While this motion was still pending, Barker reached a conditional plea agreement with the government, in which she agreed to conditionally plead guilty to one count of

conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, while reserving her right to appeal the denial of her motion to suppress. The district court accepted her plea and sentenced her to 188 months in prison – a sentence at the low end of her advisory guidelines range. Following the entry of judgment, Barker timely appealed, seeking review of the denial of her motion to suppress.

On appeal, the parties' briefing focused on the merits of Barker's motion to suppress. Barker argued (1) that the good faith exception should not apply in this case; (2) that the evidence at issue should alternatively be suppressed under North Carolina state law; and (3) that her district court counsel was ineffective in failing to timely object to the magistrate judge's recommendation to deny her motion. The government defended the judgment by arguing both that the search warrant was supported by probable cause and, even if not, that the good faith exception applied. And Barker could not establish ineffective assistance of counsel on the record before the court, the government contended.

We then directed the parties to submit supplemental briefing on the potential impact of Barker's failure to timely object to the magistrate judge's recommendation. In our circuit, a party who "fails to make any timely objections to a magistrate judge's report" waives her right to appellate review – under any standard of review – of "the judgment of a district court adopting the magistrate[] [judge's] findings." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (internal quotation marks omitted); *see United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014). So we asked the parties to address whether

7

Barker's waiver should be excused and, if not, whether her conditional guilty plea was valid despite purporting to reserve a waived issue for appeal.

## II.

### A.

We address first the issue raised by the court in our supplemental briefing order: the impact, if any, of Barker's failure to timely object to the magistrate judge's recommendation that her motion to suppress be denied. As both our court and the Supreme Court have made clear, failure to preserve an issue for appeal in this manner does not affect our jurisdiction. *United States v. Cabrera-Rivas*, 142 F.4th 199, 210 (4th Cir. 2025); *Thomas v. Arn*, 474 U.S. 140, 155 (1985). And that means we need not decide the issue of waiver here. Instead, we may assume without deciding that Barker's failure to timely object does not preclude our review and proceed directly to the merits of her appeal. *Cabrera-Rivas*, 142 F.4th at 210 (taking that approach to a criminal defendant's potential waiver through failure to object); *cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998).

That approach seems particularly prudent here. In response to our supplemental briefing order, the parties have debated whether any waiver by Barker should be excused by this court under the standard laid out in *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 103–05 (4th Cir. 2020). And as noted above, the government did not itself invoke waiver against Barker, choosing instead to defend the judgment on the merits of the suppression issue. *Cf. United States v. Ebert*, 61 F.4th 394, 405 n.6 (4th Cir.

8

2023) (noting that a "strong argument" for waiver could be made, but declining to "rest [the] decision" on that ground because the government did not raise it).  We see no need to wade into those threshold issues in this case, in which – as we discuss below – the merits are relatively straightforward.

**B.**

We now turn to Barker's motion to suppress.  Normally we review a district court's denial of a motion to suppress de novo.  *United States v. Palmer*, 159 F.4th 221, 228 (4th Cir. 2025).  But our decision in *Cabrera-Rivas* raises questions about whether we should instead treat Barker's failure to object to the magistrate judge's recommendation as a forfeiture and apply plain error review.  *See* 142 F.4th at 211–12.  For their part, both parties took the position in their briefs that de novo review is the proper standard here. Opening Brief at 10; Response Brief at 14.  Ultimately, we need not decide which standard of review applies, because we would affirm the judgment under either de novo or plain error review.

As outlined above, the magistrate judge and district court concluded that the search warrant for Barker's home lacked probable cause, but that suppression of the evidence recovered was not required because the good faith exception to the exclusionary rule applied.  We agree that the evidence need not be suppressed, but for a different reason:

9

The search warrant for Barker's home was supported by probable cause. On that basis, we affirm the denial of Barker's motion to suppress.[1]

"Probable cause is not a high bar, requiring only 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Sanders*, 107 F.4th 234, 250 (4th Cir. 2024) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Whether probable cause exists "must be assessed objectively based on a totality of the circumstances, including 'common-sense conclusions about human behavior.'" *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 58 (2018)). And when a magistrate issues a search warrant, we afford "great deference" to that determination, reviewing only "whether the judicial officer had a substantial basis for finding probable cause." *United States v. Sueiro*, 59 F.4th 132, 139 (4th Cir. 2023) (internal quotation marks omitted); *see also, e.g.*, *Gates*, 462 U.S. at 236 ("A magistrate's determination of probable cause should be paid great deference by reviewing courts." (internal quotation marks omitted)).

Here, the affidavit submitted in support of the search warrant application contained the following information: (1) the affiant, a Deputy Sheriff in the county, worked as a

---

[1] Despite Barker's claims to the contrary, the government was not required to cross-appeal to argue for affirmance based on probable cause. "An appellee who does not take a cross-appeal may urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015) (internal quotation marks omitted). What that appellee cannot do without cross-appealing is "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Id.* Here, because the government advanced probable cause as an alternative ground for affirming the judgment, rather than to change the rights of any party in this case, no cross-appeal was necessary.

Narcotics Investigator; (2) on the day in question, law enforcement was surveilling Barker's home due to suspected drug activity there; (3) early that morning, officers found Xanax and a concealed gun in Barker's car; (4) that afternoon, officers saw Gill's car "leave [Barker's] residence"; (5) Gill was known to officers for "several interactions in the drug trade" in the county, and she had recently been observed at another location known for "a large volume of drug activity"; (6) immediately after leaving Barker's residence, Gill led officers on a high-speed chase and then fled on foot; (7) while fleeing on foot, Gill attempted to discard more than 60 grams of pure methamphetamine; and (8) Gill had $2,151 in cash in her car. J.A. 87–90. Considering the totality of these circumstances, we conclude that the state magistrate had a substantial basis to find probable cause.

This information plainly linked Barker to possible drug trafficking. The affiant, a narcotics investigator, was surveilling her home for possible drug activity. On the day in question, Barker was found with a small amount of a controlled substance and a concealed gun. Barker had some connection with Gill, who was known to law enforcement for involvement in the drug trade and who had recently been seen at a location known for drug activity. And later on that same day, shortly after leaving Barker's residence, Gill was apprehended with a significant amount of methamphetamine and more than $2,000 in cash. All this information created a "fair probability" that Barker might be involved in illegal drug activity – and none of Barker, the magistrate judge, or the district court questioned that link.

Instead, the contested issue was whether this information could lead to the reasonable conclusion that evidence of that illegal drug activity might be found inside

11

Barker's home. *See Barker I*, 2022 WL 1498201, at *3. For at least two reasons, we think this required nexus was established.

First, as we have explained, a search warrant affidavit need not "close every inferential loop" or "directly link the evidence sought with the place to be searched." *United States v. Orozco*, 41 F.4th 403, 410 (4th Cir. 2022) (internal quotation marks omitted). Instead, "[i]t need only supply enough facts for a neutral magistrate, who may make reasonable inferences to fill in any logical gaps, to find the required nexus." *Id.* Here, the affidavit explained that officers saw a car they believed to be driven by Gill "leave [Barker's] residence." J.A. 88. Again, these officers were already surveilling Barker's house because they suspected drug activity might be occurring there, and Gill was known for activity in the drug trade. Although the affidavit did not say that Gill had been *inside* the home, that is a reasonable inference, given that Gill's car was seen "leav[ing] the residence." *Id.* And regardless of whether Gill actually entered the home, her presence there, combined with the other information provided by the affidavit, provided a substantial basis to find a "fair probability" that the home was connected to the suspected illegal activity. *See Sanders*, 107 F.4th at 250.

Second, "[i]n previous drug trafficking cases, we have found the nexus requirement satisfied when there was evidence that the suspect was involved in the crime, coupled with 'the reasonable suspicion . . . that drug traffickers store drug-related evidence in their homes.'" *United States v. Lull*, 824 F.3d 109, 119 (4th Cir. 2016) (quoting *United States v. Williams*, 548 F.3d 311, 319 (4th Cir. 2008)). And the affidavit here relied in part on exactly that reasonable suspicion, explaining that drug dealers often keep "contraband,

12

proceeds of drug sales, and other records of drug transactions," as well as "paraphernalia for the packaging, cutting, weighing, and distribution of controlled substances," in or around their homes.  J.A. 90.

We appreciate, as the magistrate judge noted, that the affidavit in this case could have been more detailed, *see Barker I*, 2022 WL 1498201, at *4 – but we do not require warrant affidavits to close every possible loop, *Orozco*, 41 F.4th at 410.  Here, the affidavit provided sufficient information to find a nexus between Barker's residence and the suspected criminal activity, and thus we conclude that the search warrant was supported by probable cause.[2]

### C.

Finally, we briefly address two other arguments raised by Barker:  that the search of her home violated North Carolina state law, and that her counsel in the district court was constitutionally ineffective.

As an alternative basis for suppression, Barker argues that the search of her home violated the North Carolina Constitution.  And because the search warrant was sought by state-level law enforcement officers and authorized by a state judicial official, and a state prosecutor originally charged her in state court, Barker claims the evidence should be suppressed to vindicate her state constitutional rights.  We disagree.  Barker's appeal involves a Fourth Amendment claim in a federal criminal case – and "state law d[oes] not

---

[2] Because we affirm the denial of Barker's motion to suppress on this basis, we need not consider whether the good faith exception applies in this case.

alter the content of the Fourth Amendment." *Virginia v. Moore*, 553 U.S. 164, 172 (2008). Even when states provide protections "above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same." *Id.* at 173. So even if the search at issue here *did* violate North Carolina law (which we do not decide), that state law violation alone would not provide a basis for suppression under the Fourth Amendment.

Barker also argues that her district court counsel's performance was constitutionally ineffective when he failed to timely object to the magistrate judge's recommendation that her motion to suppress be denied. But even assuming this error amounts to constitutionally deficient performance, Barker cannot show a reasonable probability that, but for the failure to timely object, her motion to suppress would have been granted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hope v. Cartledge*, 857 F.3d 518, 523–24 (4th Cir. 2017). On the contrary, we have reviewed the merits of her suppression claim, without considering the impact of her failure to timely object, and affirmed the denial of her motion. That means Barker cannot establish ineffective assistance of counsel on the record before us on appeal.

## III.

For the foregoing reasons, we affirm the district court's judgment against defendant Rebecca Barker.

*AFFIRMED*